IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATIONAL AMERICAN INSURANCE COMPANY, an Oklahoma corporation,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>HANNOVER RUCKVERSICHERUNGS-AKTIENGESELLSCHAFT and BENFIELD, INC.,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Case No. CIV-04-1436-M<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

This case is currently set on the Court's September, 2005 trial docket.

Before the Court is defendant Benfield, Inc.'s ("Benfield") Motion for Summary Judgment, filed June 10, 2005. On July 8, 2005, plaintiff National American Insurance Company ("NAICO") filed its response, and on August 1, 2005, Benfield filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction

NAICO is an insurance company that underwrites, among other things, property and casualty coverage for businesses. Benfield is a leading international reinsurance[1] broker. Defendant Hannover Ruckversicherungs-Aktiengesellschaft ("Hannover") is a reinsurer.[2]

---

[1] Reinsurance is a part of the insurance industry, whereby "reinsurers" agree to indemnify an insurance company, known as the "reinsured" or "ceding insurer or company," for all or part of the potential liability accepted by the ceding company pursuant to the underlying policies that it has issued to its policyholders. Under this arrangement, the ceding insurer "cedes" an agreed portion of its potential liability to its policyholders to one or more reinsurers, which in return receive a portion of the premiums that the ceding company receives from its policyholders.

[2] NAICO has settled and dismissed its claims against Hannover.

Effective July 1, 2002, NAICO entered into three reinsurance contracts with Employers Reinsurance Corporation ("ERC") ("ERC Reinsurance Contracts").[3]  Each of the ERC Reinsurance Contracts contains the following provision:

> The term "net premium income" shall mean written premiums, less unearned premiums returned, entered on the books and records of the REINSURED from policies becoming effective on the effective date and prior to the termination date of this Agreement.  Reinsurance premium shall be deemed earned when reported to the CORPORATION.

Effective July 1, 2003, NAICO and ERC agreed to reduce ERC's interest, from 100% to 80%, in the reinsurance it had issued to NAICO.  To find another reinsurer to assume the 20% interest, NAICO used Benfield as its reinsurance broker.  In addition to finding another reinsurer, Benfield told NAICO that it would perform an analysis of the ERC Reinsurance Contracts to determine whether any provisions were problematic or could be improved.  The parties' submissions do not reveal the precise contours of Benfield's contract analysis.  It is clear, though, that Benfield did not raise any issues or suggest any changes regarding the last sentence of the above-quoted provision.

In May 2003, Benfield provided NAICO and potential broker-market reinsurers with "slips" setting forth the proposed terms for the reinsurance.  The proposed slips set forth the following definition of "net earned premium," which differed from the existing ERC language:

> "Net earned premium" as used herein is defined as the Company's gross earned premium for the classes of business subject to this Contract, less only the earned portion of premiums, if any ceded by the Company for reinsurance which inures to the benefit of this Contract.

---

[3]NAICO purchased this reinsurance directly from ERC.

This definition of "net earned premium," however, was not ultimately used in the reinsurance contracts; the definition in the ERC Reinsurance Contracts was used instead. The parties disagree as to why the proposed definition was not used. Benfield states that NAICO rejected this definition and directed Benfield to use the language contained in the ERC Reinsurance Contracts. NAICO states that it did not direct Benfield to use the ERC language but instead sought Benfield's advice, counsel, and services concerning that issue. Specifically, NAICO's president testified that he told Benfield's representative that it was "probably okay" to use the ERC Reinsurance Contracts unless Benfield saw a reason that NAICO should not do it. Additionally, one of Benfield's representatives testified that the contract language at issue was never discussed with NAICO.

At the end of June 2003, NAICO directed Benfield to place 20% of the reinsurance with Hannover. On July 1, 2003, Benfield informed Hannover of NAICO's firm order terms. Benfield further informed Hannover of the major differences between the language used in the proposed slips and in the firm order. Benfield specifically informed Hannover that the premium base has been revised to written premium and the definition of net premium income treats written premium as earned when ceded to the reinsurer. Subsequently, NAICO and Hannover executed reinsurance contracts, which contained the language set forth in the firm order.

On March 25, 2004, NAICO informed Benfield that it intended to terminate its reinsurance contracts with Hannover effective July 1, 2004 on a "cutoff" basis. NAICO requested Benfield to ask Hannover to waive the minimum premium provisions in the contracts and to return the unearned portions of the reinsurance premium that it had paid. Hannover refused and informed NAICO, through Benfield, that there was no unearned premium to return because the reinsurance contracts stated that "[r]einsurance premium shall be deemed earned when reported to the Reinsurer."

NAICO disagreed with Hannover's interpretation of the contracts and again requested Hannover to return the unearned portions of the reinsurance premium that it had paid. Hannover refused.

When NAICO and Hannover could not resolve their dispute, NAICO brought the instant action, asserting the following claim against Benfield:

ALTERNATIVE CLAIM FOR RELIEF AGAINST BENFIELD

18. Benfield is the world's largest reinsurance intermediary and holds itself out as possessing peculiar and particular skill with regard to reinsurance drafting and administration.

19. Benfield drafted the agreements between Hannover and NAICO (the Hannover Agreements) based upon its own skills and knowledge whether or not it adopted the language originally utilized by ERC.

20. At all pertinent times, Benfield was NAICO's "broker of record" and as such owed NAICO the duty of exercising particular care and skill in drafting the Hannover Agreements. NAICO justifiably relied upon Benfield's reputed skill, knowledge, and representations regarding the Reinsurance Agreements.

21. In failing to advise NAICO of the legal affect [sic] of the peculiar language of the Reinsurance Agreements, Benfield breached its duties and obligations to NAICO. As a result of Benfield's errors and omissions, NAICO will be damaged in an amount in excess of $2,000,000, if this court does not rescind or reform the Reinsurance Agreements as requested by NAICO.

First Amended Petition at 7. Benfield has now moved for summary judgment as to this claim.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

    A. Duty to provide "legal" advice[4]

NAICO asserts that Benfield had an enforceable duty to provide advice regarding the legal consequence of the subject provision.[5] Benfield asserts that it had no duty or legal ability to provide legal advice to NAICO.

Initially, it should be noted that Benfield did not provide any <u>legal</u> advice or analysis in this

---

[4] This subsection relates only to NAICO's contention that Benfield breached its duty by failing to provide <u>legal</u> advice regarding the subject provision. It does not address NAICO's contentions that Benfield breached its duty to provide expert, non-legal advice or breached the statutory duties Benfield had as NAICO's broker. These contentions are discussed in subsections B and C, *infra*.

[5] It is unclear whether NAICO is asserting a claim based upon Benfield's alleged breach of its duty to provide "legal" advice, is asserting a claim based upon Benfield's alleged breach of its duty to provide expert, non-legal advice, or is asserting both claims.

case. Further, it should also be noted that while Benfield offered to provide, and provided, an analysis of the ERC Reinsurance Contracts, that analysis was not of a "legal" nature but was provided as advice from an experienced reinsurance broker.

A non-lawyer is under no duty to give legal advice. *Pope v. Sav. Bank of Puget Sound*, 850 F.2d 1345, 1353 (9th Cir. 1988). To hold otherwise would require the non-lawyer to engage in the unauthorized practice of law. *Id.* However, if a non-lawyer voluntarily chooses to give legal advice, he assumes a duty of exercising due care in the giving of that advice. *See McDonald v. Title Ins. Co. of Oregon*, 621 P.2d 654, 658 (Or. Ct. App. 1980).

Because Benfield is not a law firm, and because Benfield did not voluntarily give legal advice to NAICO, the Court finds that Benfield had no duty to give legal advice and is not liable for any failure to give legal advice. Accordingly, the Court finds that Benfield is entitled to summary judgment as to NAICO's failure to provide legal advice claim.

B. Duty to provide non-legal advice

NAICO contends that Benfield breached its duty to provide expert, non-legal advice regarding the provisions of the reinsurance contracts. As a general rule, an insurance broker has a duty to act in good faith and to use reasonable care, skill, and diligence in the procurement of insurance. *Rotan v. Farmers Ins. Group of Cos.*, 83 P.3d 894, 895 (Okla. Ct. App. 2003); *Swickey v. Silbey Cos.*, 979 P.2d 266, 269 (Okla. Ct. App. 1999); *see also Cent. Nat'l Ins. Co. of Omaha v. Devonshire Coverage Corp.*, 426 F. Supp. 7, 23 (D. Neb. 1976) ("[A]n agent has a duty to his principal to act with the degree of care and skill customarily exercised by such agents, and to exercise any special skills that he may have on behalf of his principal"); Douglas R. Richmond, *Insurance Agent and Broker Liability*, 40 Tort Trial & Ins. Prac. L.J. 1, 10 (2004). If a broker

breaches this duty, he may be held liable for any damages caused thereby. *Cent. Nat'l Ins. Co. of Omaha*, 426 F. Supp. at 23.

Further, as a general rule, brokers have no duty to advise insureds about the adequacy of the insurance coverage they purchase or about the terms of other policies that they may hold. Richmond, *supra*, at 25. However, if a broker voluntarily chooses to advise an insured on coverage issues, it assumes a duty to exercise due care in the giving of that advice. *Id.* at 26; *see also McDonald*, 621 P.2d at 658.

In the case at bar, Benfield voluntarily offered to conduct a contractual analysis of the ERC Reinsurance Contracts. Because Benfield voluntarily chose to advise NAICO regarding the terms of the ERC Reinsurance Contracts, the Court finds that Benfield had a duty to exercise due care in the giving of its advice. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to NAICO and viewing all reasonable inferences in NAICO's favor, as the Court must when addressing a motion for summary judgment, the Court finds that there is a genuine issue of fact as to whether Benfield exercised due care in the giving of its advice.[6]

Benfield, however, further asserts that it had no duty to advise NAICO of things of which NAICO should already have been aware. Specifically, Benfield asserts that it did not have a duty to advise NAICO regarding the provision at issue because the provision is unambiguous, the

---

[6]In its motion for summary judgment, Benfield asserts that expert testimony is required to support a claim of reinsurance broker negligence. The Court, however, finds that expert testimony is not required in this case to show a breach of Benfield's duties. "[I]n the context of broker negligence, 'no clear standard has evolved [nationally] for determining whether a particular negligent act sufficiently involves an agent's professional skills so as to require the use of expert testimony.'" *AAS-DMP Mgmt., L.P. Liquidating Trust v. Acordia Northwest, Inc.*, 63 P.3d 860, 842 n.17 (Wash. Ct. App. 2003) (quoting Lori J. Hankel, Annotation, *Necessity of Expert Testimony To Show Standard of Care in Negligence Action Against Insurance Agent or Broker*, 52 A.L.R. 4th 1234 (1987)).

7

reinsurance contracts were provided to NAICO, and NAICO approved and signed those contracts.

Courts have held that insureds have a duty to examine their policies and that if they fail to do so, the insurance broker is not liable because the insured is "charged with the knowledge of the terms and conditions of the policy." *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1509 (11th Cir. 1997) (internal quotations and citation omitted); *see also* Richmond, *supra*, at 43.

> An exception to this general rule applies to cases in which the insurance [broker] acted as an expert in procuring coverage, and the insured relied on the agent's expertise. Under such circumstances, the insurance [broker] may be liable . . . even if the insured has a copy of the insurance policy. An insured who relies on an expert insurance [broker] is not required to "minutely examine" the policy for coverage defects. However, if an examination of the policy by the insured would have made it "readily apparent" that [there was a defect in the policy], the [broker] who acted as an expert will escape liability. In determining whether a defect is readily apparent, the policy should be read as a layman would read it, and not as an insurance expert would read it.

*Westchester Specialty Ins. Servs.*, 119 F.3d at 1509-10 (internal quotations and citations omitted).

Having carefully reviewed the parties' submissions, the Court finds that there is a genuine issue of material fact as to whether Benfield acted as an expert in procuring the reinsurance and whether NAICO relied on Benfield's expertise.[7] Further, even assuming, without deciding, that the provision at issue is unambiguous, the Court finds that the effect of this provision in relation to terminating the reinsurance contracts on a "cutoff" basis is not "readily apparent" and that NAICO would have had to "minutely examine" the contracts to discover this alleged defect.

---

[7]Benfield makes much of the fact that NAICO is itself an insurance company and has acquired reinsurance directly from reinsurers. However, "the fact that an insured is sophisticated does not mean that the insured cannot hire experts to assist it with particular matters." *Westchester Specialty Ins. Servs.*, 119 F.3d at 1511 n.9.

Accordingly, because there are genuine issues of material fact as to whether Benfield exercised due care in the giving of its advice regarding the terms of the ERC Reinsurance Contracts, whether Benfield acted as an expert, and whether NAICO relied on Benfield's expertise, and because the effect of the provision at issue is not "readily apparent," the Court finds that summary judgment as to NAICO's failure to provide expert, non-legal advice claim is not appropriate.

C.  Statutory duties

In its response to Benfield's motion for summary judgment, NAICO asserts that Benfield violated its statutory duties by not advising NAICO regarding the provision at issue, by never obtaining authorization from NAICO to earn the commissions it earned, and by failing to disclose its close relationship with Hannover.  NAICO did not assert these alleged statutory violations in its complaint and raises this statutory duty claim for the first time in its response.

A plaintiff cannot assert new theories of liability for the first time in response to a defendant's motion for summary judgment.  *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GMBH*, 386 F.3d 1133, 1146 (Fed. Cir. 2004); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004).  Because NAICO's statutory duty theory of liability was not raised in its complaint, the Court finds that this theory of liability has not been properly asserted and should not be considered.

IV.  Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Benfield's Motion for Summary Judgment [docket no. 36] as follows:

    A.    The Court GRANTS Benfield's motion for summary judgment as to NAICO's failure to provide legal advice claim, and

B.The Court DENIES Benfield's motion for summary judgment as to NAICO's failure to provide expert, non-legal advice claim.

**IT IS SO ORDERED this 23rd day of August, 2005.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE